■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LYMUS MIDDLETON, Appellant.—Judgment, Supreme Court, New York County, dated November 16, 1978, convicting defendant, after jury trial, of manslaughter in the first degree (Penal Law, § 125.20), and sentencing him to an indeterminate prison term not to exceed 10 years, is unanimously affirmed. The matter is remitted to the Supreme Court, Trial Term, for appropriate proceedings for surrender of defendant pursuant to CPL 460.50 (subd 5). Defendant's motion to suppress his statements to the police and to the District Attorney was properly denied after hearing. On the present appeal, only the statement to the District Attorney is attacked. We are satisfied that defendant received and understood the *Miranda* warnings and waived his right to have an attorney appointed for him and present during the questioning by the District Attorney, and we affirmed the suppression court's findings of fact. Defendant never contended that he intended his remark, in response to the District Attorney's *Miranda* warning about defendant's right to an attorney, to be a request for an attorney. On the contrary, at the suppression hearing, defendant testified that he did not request an attorney partly because he did not consider that he was arrested, and partly because he would not trust any attorney that the District Attorney would get him. (We note that the parties' briefs purporting to quote the *Miranda* warnings inadvertently omit the following portion of the *Miranda* warning as given: "Question: If you cannot afford an attorney or don't have an attorney, one will be provided for you now free of charge

before any questions, do you understand that? Answer: Yes.") As in *People v Collins* (38 NY2d 968), the statement to the District Attorney here under attack followed a number of conversations with police officers, in each of which defendant was given the *Miranda* warnings and made essentially the same statement that he made to the District Attorney on the stenographically reported Q and A. These statements were essentially exculpatory except as to the admission that defendant was present at the scene of the crime at least very shortly after it. The defendant's presence was shown by overwhelming other evidence, direct and circumstantial, and was never really disputed. Even if the denial of the suppression as to the Q and A had been error, it would have been harmless beyond a reasonable doubt in view of the several prior unattacked statements substantially to the same effect and the overwhelming evidence of guilt. As to the claim that it was improper for the Supreme Court to direct that a mold or cast of the defendant's teeth be taken, we think that this was not an unreasonable intrusion in the circumstances here shown, with the deceased having bite marks on his body, the defendant shown to be present at or about the time of the crime, and a statement that the District Attorney had been informed by a dentist associated with the office of the chief medical examiner, that, if the dentist could examine the defendant's mouth and make molds of his teeth, a comparison could be made of his teeth and he could determine whether the defendant's mouth caused the bite marks. Although there had not yet been a preliminary probable cause hearing or an indictment, defendant was under arrest and in custody, the arrest being based upon evidence and information which clearly amounted to probable cause to arrest. We do not deem it necessary to discuss the other claims of error. In our view, they do not warrant reversal. Concur—Fein, J. P., Sullivan, Silverman and Carro, JJ.